## In re DUFF, Bankrupt.

*(District Court, S. D. New York. October 14, 1880.)*

1. BANKRUPT ACT—" PRINCIPAL DEBTOR"—COLLATERAL BOND—SURETY.—A bankrupt is not liable as " principal debtor," within the meaning of the bankrupt act, upon a collateral bond, where it is apparent upon the face of the instrument that the obligation was incurred by the bankrupt as a surety.

*In re Loder*, 4 N. B. R. 190.

2. SAME—" MERCHANT OR TRADESMAN"—THEATRICAL MANAGER.—A theatrical manager who buys costumes, machinery, etc., for use in his business, and who on a few occasions has sold some such property, is not a merchant or tradesman within the meaning of the bankrupt act.

*In re Odell*, 17 N. B. R. 73, distinguished.

3. SAME—REV. ST. § 5110, SUBD. 9—FRAUDULENT TRANSFER.—A transfer by an insolvent debtor, for the purpose of concealing his property from his creditors, is an act done "in contemplation of becoming bankrupt," within the meaning of the ninth subdivision of section 5110 of the Revised Statutes, although the debtor did not then intend or expect to go into bankruptcy.

A transfer of certain personal property *held fraudulent*, under the circumstances of this case.

In Bankruptcy.

*F. Bien* and *A. Taylor*, for creditors.

*J. R. Cuming*, for bankrupt.

CHOATE, D. J. This is an application for the discharge of the bankrupt. The discharge is opposed on several grounds:

1. It is objected, first, that the bankrupt has not obtained

the assent of the requisite proportion of the creditors who have proved their debts, to whom he is liable as principal debtor. One Thayer has proved a debt for upwards of $30,-000. This creditor has not assented, and, if his claim is to be considered in the computation of the requisite one-third in value, this point is well taken. The question is whether the bankrupt is liable as *principal debtor* upon this claim. Thayer's proof of debt is upon a bond for the sum of $60,000, executed by the bankrupt, June 15, 1877, to one Hill, as receiver, appointed by the court in an action against John A. Duff and others. Thayer proves as assignee of the bond. The condition of the bond is the payment of the sum of $30,000 to the receiver, or his assigns, June 15, 1882, with interest semi-annually, "according to the condition of a bond made by John A. Duff and Rufus C. Duff, jointly and severally, to said receiver, bearing even date herewith, to which bond this is collateral." I think enough appears on the face of this bond to show that this obligation was incurred by the bankrupt not on his own account, but as surety for John A. Duff, and, therefore, that he cannot be regarded as having become indebted thereon as principal debtor. The construction of this phrase, "principal debtor," was carefully considered by this court in *In re Loder*, 4 N. B. R. 190. It was there held that an obligation as indorser, after the liability has become fixed by non-payment and notice, is not an obligation as "principal debtor," if the indorsement was for the accommodation of the maker of the note. I think the present case is within that decision. It is argued, however, that on this bond itself the bankrupt was the principal obligor,—indeed, the only obligor,—and not in the position of an indorser, who is on the face of the contract not the principal obligor. I think, however, that the distinction in the statute referred not to the form of the obligation so much as to the real relation of the bankrupt to the debt itself. Greater indulgence was intended to be extended to bankrupts in respect to obligations incurred on behalf of others than in respect to those incurred on their own account; and it seems to me to be immaterial whether the bankrupt joins in the bond of the principal debtor as a

surety, or gives his own collateral bond, which, on its face, shows that it is given by him as surety. The difference is one of form only, and not of substance. How it may be in the case supposed by the learned counsel for the creditor, of commercial paper given by the bankrupt, and which he signs as maker for the accommodation of the indorser, if proved by a holder who had no knowledge of the nature of the transaction except what the face of the paper shows, it is unnecessary to decide. In this case the suretyship appeared on the face of the instrument.

2. It is also objected that the bankrupt, being a merchant or tradesman, did not keep proper books of account. The bankrupt was a theatrical manager. It did not appear that he had any other business. He bought costumes, machinery, etc., for use in his business. It was also shown that on a few occasions he had sold some such property. I think he cannot be considered a merchant or tradesman within the meaning of the statute. The case of *In re Odell*, 17 N. B. R. 73, is relied on by the opposing creditors. That was the case of a keeper of a livery stable. He was, under the peculiar circumstances shown in respect to his business, held to be a merchant or tradesman. It was held that, in connection with his business of keeping a livery stable, he was also engaged in the business of buying and *selling* horses, and food for horses. The present case is essentially unlike that. I cannot find on the evidence that this bankrupt made the selling of anything a regular part of his business, as was the case in *In re Odell*. The sales that he made were isolated transactions, and not, as in Odell's case, within the regular scope and purview of the business he undertook to carry on.

3. It is also objected that the bankrupt, in contemplation of bankruptcy, made certain fraudulent transfers of his property to his father, John A. Duff, and to one Banvard, his landlord, with intent to prefer them as creditors, and to prevent his property from coming to the hands of his assignee, and being distributed among his creditors. The transfers thus attacked were in March, 1878. The petition was filed August 31, 1878.

These specifications, if sustained, must come within the ninth subdivision of section 5110. It appears that the bankrupt transferred to his father the principal part of his property, consisting of costumes and other implements of his trade. He was indebted at the time, aside from his obligation on the bond to the receiver, about six or seven thousand dollars, which he had no means to pay. He was indebted to his father, for money loaned, several thousand dollars. The transfer to his father was without writing. The property was of very uncertain value, being worth but a few hundred dollars, if purchased for the purpose of selling it again, but having cost about $3,000. Yet there appears to have been no agreement with the father as to the price at which he took it. The bankrupt testifies that he had no intention of preferring his father, but transferred it to him in payment of moneys loaned. He testified that the reason why it was transferred to him rather than to anybody else was that he was the nearest person being at hand in the theater; that his father was not pressing him for money, and that the transfer was made at his own suggestion. He also testifies that he had no thought at the time of going into bankruptcy. But upon all the evidence, and considering the very suspicious circumstances attending the sale, I can find no adequate motive for it except to protect the property from his creditors. With this purpose there may also have been an intention at the same time to secure or prefer his father.

The fact that the bankrupt, then, did not intend or expect to go into bankruptcy, if he is to be credited in that respect, does not relieve the act from being considered an act done "in contemplation of becoming bankrupt" within the meaning of the statute. That expression means, as has often been held, in contemplation of committing an act of bankruptcy. Such a transfer is in itself an act of bankruptcy, if made, as this appears to have been, with intention to cover up his property from his creditors, and to prevent its distribution among them. He claims to have had great expectations of success with a play to be presently brought out. Over-sanguine hope of better business may sometimes justify great present sacri-

fice of property or the continued payment of debts by one who is really insolvent, but cannot excuse, under the bankrupt law, the actual withdrawal and concealment of property by an insolvent debtor, under cover of a transfer such as this, which was also in fact intended to hinder, delay, and defraud his creditors. It is unnecessary to consider the further charges as to the transfer to Banvard. The specification of a fraudulent transfer to John A. Duff is sustained, and on this ground the discharge must be refused.